**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pimal Property, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> Capital Insurance Group, Inc., a Delaware corporation; Eagle West Insurance Company, a California corporation; California Capital Insurance Company, a California corporation, <br><br> Defendants. | No. CV11-02323-PHX-DGC <br><br> **ORDER** |

Plaintiff Pimal Property, Inc. ("Pimal") commenced this action in Maricopa County Superior Court. No. CV2011-016820. On November 23, 2011, Defendants Capital Insurance Group ("CIG," incorrectly identified as Capital Insurance Group, Inc.), Eagle West Insurance Company ("Eagle West"), and California Capital Insurance Company ("CCIC") removed the case to this Court. Doc. 1. Pursuant to the stipulation of the parties (Doc. 16), Defendant CIG was dismissed with prejudice on January 10, 2012.[1] Doc. 18.

Defendant CCIC has filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Doc. 12. The motion is fully briefed. Docs. 12, 19, 20. No party has requested oral argument. For the reasons that follow, the Court will

---

[1] CIG is a registered service mark that is not a legal entity capable of suing or being sued. *See* Doc. 13 (CIG's motion to dismiss).

deny the motion.

**I.  Factual Background.**

Plaintiff alleges the following facts in the complaint. At all times pertinent to the claims asserted, Plaintiff owned the Sendero Ridge apartment complex at 945 West Broadway Road, Mesa, Arizona 85210 ("the Property"). Doc. 1-1, at 11, ¶ 12. The Property is insured by one or more of the Defendants under policy number 6-BOP-2-1576507 ("the Policy"). *Id.* at 11, ¶ 13. When the Policy was issued, it was mailed to Plaintiff with a cover letter from Peter Cazzolla, the President and Chief Executive Officer of CIG, and was addressed to "CIG Policy Client." *Id.*

Mr. Cazzolla is the Chief Executive Officer for CIG, CCIC, and Eagle West. *Id.* at 12, ¶ 14. CIG, CCIC, and Eagle West share the same business addresses, website, and telephone numbers. *Id.* at 11, ¶ 11. It is presently unclear which of the Defendants actually issued the Policy. *Id.* at 11, ¶ 10. Some or all of the Defendants provide insurance claims adjusting and related services for the insurance policies that they issue. *Id.* at 12, ¶ 20.

On October 5, 2010, when the Policy was in effect, a major hail storm caused significant damage to the roofs and various fixtures of the structures situated on the Property. *Id.* at 12, ¶¶ 17, 18. Plaintiff engaged Skipton & Associates, Inc. ("S&A") to assist with an insurance claim. On April 12, 2011, S&A requested a copy of the Policy from CIG. *Id.* at 12, ¶ 21. Phillip Henry, a General Adjuster for Defendants, assigned Plaintiff a claim number in a letter to S&A dated April 13, 2011. *Id.* at 12, ¶ 22. In that letter, Mr. Henry's signature block identified him as a General Adjuster for CCIC. *Id.* at 12-13, ¶ 23. In subsequent letters, his signature block identified him as a General Adjuster for Eagle West. *Id.* All emails from Mr. Henry had a signature block identifying him as a General Adjuster for CIG. *Id.*

Defendants hired American Technologies, Inc. ("ATI") and S&A hired Kowalski Construction, Inc. to inspect the property and provide an analysis and estimate of the cost of repairing damages caused by the hailstorm. *Id.* at 13, ¶¶ 27, 28. On or around

April 19, 2011, ATI and Kowalski Construction conducted an inspection of the Property. *Id.* at 13, ¶ 29. At this inspection, Mr. Henry instructed ATI to examine the roofs on only two or three out of 22 buildings. *Id.* at 14, ¶ 31. Mr. Henry said that ATI would follow up at a later date to inspect the remaining roofs, but never did so. *Id.*

During the inspection, both ATI and Kowalski Construction agreed that the Property had suffered damage as a result of the hailstorm. *Id.* at 14, ¶ 33. On April 22, 2011, Mr. Henry wrote an email to S&A claiming that ATI was unable to find any damage. *Id.* at 14, ¶ 34. On August 5, 2011, on behalf of Plaintiff, S&A submitted a claim to Mr. Henry that estimated $472,578.97 in damages to the Property. *Id.* at 15, ¶ 39. On August 30, 2011, ATI wrote to Kowalski Construction requesting further information to finalize its estimate. *Id.* at 15, ¶ 41.

On September 2, 2011, Mr. Henry wrote a letter to S&A in which he claimed to be unable to accept or decline the claim due to a discrepancy in the scope of the loss. *Id.* at 16, ¶ 44. S&A responded with a letter on September 30, 2011, describing an error that it had made and submitting a revised loss estimate of $499,030.52. *Id.* at 16, ¶ 45. On October 7, 2011, Mr. Henry formally denied Plaintiff's claim in a letter indicating that the inspection revealed no damages. *Id.* at 16, ¶ 46.

Plaintiff makes four claims: (1) tortious bad faith, jointly and severally against all Defendants; (2) breach of contract, jointly and severally against all Defendants; (3) alter ego liability, jointly and severally against all Defendants; and (4) in the alternative, Defendants participated in a joint venture, acted in concert, and aided and abetted one another in a tortious breach of duties owed to Plaintiff. Doc. 1-1.

**II.    Legal Standard.**

When reviewing a complaint under Rule 12(b)(6), all allegations of material fact "are taken as true and construed in the light most favorable to the non-moving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). Dismissal

is appropriate where the complaint lacks a cognizable legal theory, lacks sufficient facts alleged under a cognizable legal theory, or contains allegations disclosing some absolute defense or bar to recovery. *See Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).

**III. Discussion.**

CCIC argues that dismissal of Plaintiff's breach of contract and bad faith claims is appropriate because Plaintiff's insurance policy was issued by Eagle West, and therefore no privity of contract exists between Plaintiff and CCIC. CCIC further argues that the complaint fails to assert sufficient facts to state a claim for relief under alter ego, joint venture, or aiding and abetting theories. Doc. 12, at 1-2. Because the alter ego, joint venture, and aiding and abetting allegations are forms of derivative liability arising from the underlying substantive causes of action, the Court addresses the substantive claims first.

    **A. Substantive Claims.**

        **1. Claim Two: Breach of Contract.**

Generally, privity of contract must exist before one may seek to enforce or defeat the contract. *See Samsel v. Allstate Ins. Co.*, 19 P.3d 621, 625 (Ariz. App. 2001), *vacated on other grounds by Samsel v. Allstate Ins. Co.*, 59 P.3d 281 (Ariz. 2002); *Stratton v. Inspiration Consol. Copper Co.*, 683 P.2d 327, 329-30 (Ariz. App. 1984) ("Since there was no privity of contract between appellant and Inspiration, appellant has no claim for a personal judgment sounding in breach of contract.").

CCIC denies having a contractual relationship with Plaintiff because the Policy was issued by Eagle West. Doc. 12, at 4. CCIC has attached the Businessowners Declaration portion of the Contract to its motion to dismiss. Doc. 12-1 (Ex. A). *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the

plaintiff does not explicitly allege the contents of that document in the complaint."). The Businessowners Declaration confirms that Plaintiff's Policy was issued by Eagle West. Doc. 12-1 (Ex. A).

Plaintiff does not dispute the authenticity of the Businessowners Declaration. Plaintiff does not address its breach of contract claim or CCIC's lack of privity argument in its response to the motion to dismiss. Because Plaintiff and CCIC were not in privity of contract, the Court will dismiss Plaintiff's breach of contract claim against CCIC.

### 2. Claim One: Bad Faith.

CCIC argues that Plaintiff's bad faith claim fails as a matter of law because CCIC was not a party to the Policy and therefore owed no duty of good faith and fair dealing to Plaintiff. Doc. 12, at 5. Plaintiff responds that CCIC is nonetheless liable for alleged bad faith conduct as a participant in a joint venture with Eagle West. Doc. 19, at 12.

CCIC cites *Walter v. Simmons* for the proposition that an insured cannot maintain a claim for contractual bad faith against an insurance adjuster. Doc. 12, at 5. In *Walter*, an independent adjuster "was dismissed from the bad faith claim because he owed no contractual duty to act in good faith or deal fairly with [the insured]." 818 P.2d 214, 222 (Ariz. App. 1991). It appears, however, that the bad faith claim in that case was voluntarily dismissed by the plaintiff. *See id.* As the dismissal was not an issue on appeal, the court's statement is descriptive dicta and does not resolve the issue under Arizona law. CCIC also cites *Walter* for the proposition that the duty of good faith and fair dealing is a non-delegable duty of the insurer. Doc. 12, at 5. That holding is distinct from the issue of whether an insured may bring a bad faith claim against a party who was not in privity of contract. As this District has noted, Arizona case law pertaining to whether bad faith claims must generally fail due to lack of contractual privity is ambiguous. *See, e.g.*, *Ballesteros v. American Standard Ins. Co. of Wis.*, 436 F. Supp. 2d 1070 (D. Ariz. 2006); *Allo v. Am. Family Mut. Ins. Co.*, CV-08-0961-PHX-JFM, 2008 WL 4217675 (D. Ariz. Sept. 12, 2008).

*Sparks v. Republic National Life Insurance Company* is more informative. In

*Sparks*, the Arizona Supreme Court discussed bad faith liability in narrower terms of joint venture status between the insurer and insurance adjuster. The court found that the underwriter and the administrator of the insurance policy had a business relationship that contained all essential elements of a joint venture. *Sparks v. Republic Nat'l Life Ins. Co*, 647 P.2d 1127, 1138 (Ariz. 1982). The underwriter and the administrator had an agreement that the administrator would issue certificates of coverage, bill and collect premiums, and handle the investigation and payment of claims. The underwriter set guidelines for the administrator to follow in deciding whether or not to pay any given claim. Based on this joint venture, the court held that "[b]oth owed a common duty to the insureds: the duty to act in good faith." *Id.*

CCIC argues that this case does not fit under the *Sparks* analysis because a joint venture does not automatically arise from an affiliated group of insurance companies operating under a group service mark, CIG. Doc. 20, at 3. But the complaint pleads more. Plaintiff alleges that "CIG, CCIC and/or Eagle West provide insurance claims adjusting and related services for the insurance policies they issue." Doc. 1-1, at 12, ¶ 20. Plaintiff further alleges that "CIG is actively involved in the overall claims handling process, by managing that process, by setting claims handling goals and objectives, and by implementing (or failing to implement) proper claims handling rules, policies, and procedures." *Id.* at 17, ¶ 53. While Plaintiff does not name CCIC, specifically, as an entity involved in the claims process, the Court notes that CIG has identified itself as a service mark owned by CCIC. *See* Doc. 13, at 2. Viewing allegations of material fact and drawing all reasonable inferences in the light most favorable to Plaintiff, as the Court must at this stage in the proceedings, the Court will construe the allegations relating to CIG as allegations directed against CCIC as the owner of the CIG service mark.

The Court will deny the motion to dismiss the bad faith claim against CCIC because Plaintiff has alleged sufficient facts to state a claim to relief that is facially plausible under the *Sparks* analysis. To the extent that bad faith liability in terms of joint venture status remains an unsettled question in Arizona, this ambiguity should be

construed in favor of the plaintiff. *See Allo*, 2008 WL 4217675, at *3 (citing *Albi v. Street & Smith Publications*, 140 F.2d 310, 312 (9th Cir. 1944)).

### B. Derivative Liability Claims.

#### 1. Claim Three: Alter Ego.

The alter ego theory allows a parent corporation to be held liable for the acts of its subsidiary when the individuality or separateness of the subsidiary corporation has ceased. *See Gatecliff v. Great Republic Life Ins. Co.*, 821 P.2d 725, 728 (Ariz. 1991). To establish an alter ego theory of liability, a plaintiff must prove both (1) unity of control and (2) that observance of the corporate form would sanction a fraud or promote injustice. *Id.* (citing *Dietel v. Day*, 492 P.2d 455, 457 (Ariz. App. 1972)). Claim Three of Plaintiff's complaint asserts that CCIC and Eagle West are alter egos of CIG and that CIG is liable for the actions of CCIC and Eagle West under the alter ego doctrine. Doc. 1-1, at 23, ¶¶ 95, 96. CCIC challenges the sufficiency of the complaint under both prongs of the alter ego doctrine.

Plaintiff argues that the facts in this case are "remarkably similar" to the facts in *Gatecliff*. Doc. 19, at 6. In that case, the Arizona Supreme Court concluded that "observance of the corporate form could permit the two corporations to confuse plaintiffs and frustrate their efforts to protect their rights before suit, while allowing the party responsible . . . to evade liability after suit." *Gatecliff*, 832 P.2d at 729. The record suggested that one company exercised "substantially total control over the management and activities" of the second company. *Id.* at 728-729. Factors establishing "substantially total control over the management and activities" include: (1) stock ownership by the parent, (2) common officers or directors, (3) financing of the subsidiary by the parent, (4) payment of salaries and other expenses of the subsidiary by the parent, (5) failure of the subsidiary to maintain formalities of separate corporate existence, (6) similarity of logo, and (7) Plaintiff's lack of knowledge of the subsidiary's separate corporate existence. *Taeger v. Catholic Family & Cmty. Servs.*, 995 P.2d 721, 733 (Ariz. App. 1999).

Plaintiff alleges the following facts in the complaint to show unity of control. CIG is actively involved in Defendants' overall claims process, manages that process, and sets claims handling goals and objectives by implementing rules, policies, and procedures. Doc. 19, at 8; Doc. 1-1, at 17, ¶ 53. "CIG substantially controls the operations and finances of Eagle West and CCIC." Doc. 1-1, at 24, ¶ 98. Defendants share the same CEO, contact information, and letterhead. Doc. 1-1, at 24, ¶¶ 99, 102. Mr. Henry, who denied coverage for Plaintiff's insurance claim, worked as a general adjuster for CCIC and CIG. Doc. 1-1, at 12-14, ¶¶ 23, 34. Defendants intentionally blurred any distinction between the entities in their dealings with Plaintiff. Doc. 1-1, at 23-24, ¶ 97.

The complaint also alleges that to observe the corporate form "would be contrary to public policy and would promote an injustice. Doc. 1-1, at 17-18, ¶ 58. In opposing the motion to dismiss, Plaintiff argues that the complaint "provides a detailed description of CCIC's bad faith conduct, largely while operating under its service mark," and that "[u]nless the Court recognizes that CCIC is the alter ego of Eagle West, CCIC may escape liability for its bad faith conduct." Doc. 19, at 8.

At this stage, the Court will not dismiss the alter ego claim against CCIC. The Court recognizes that "[a]lter ego determinations are highly fact-based, and require considering the totality of the circumstances in which the instrumentality functions." *Legacy Wireless Servs., Inc. v. Human Capital, LLC*, 314 F. Supp. 2d 1045, 1058 (D. Or. 2004) (citations omitted). Plaintiff has alleged enough facts in the complaint to warrant further discovery on the alter ego issue.

### 2. Claim Four: Joint Venture and Aiding and Abetting.

Claim Four of the complaint alleges both joint venture and aiding and abetting theories of liability. The elements of a joint venture are different from the elements of aiding and abetting.[2] The Court will not address the joint venture theory because CCIC

---

[2] A joint venture requires five specific elements: (1) a contract, (2) a common purpose, (3) a community of interest, (4) an equal right of control, and (5) participation of both profits and losses. A contract may be implied or inferred from the acts of the parties. *Mercer v. Vinson*, 336 P.2d 854, 858-59 (Ariz. 1959).

- 8 -

challenges only the aiding and abetting theory.

Claims of aiding and abetting tortious conduct require proof of three elements: (1) the primary tortfeasor must commit a tort that causes injury to the plaintiff; (2) the defendant must know that the primary tortfeasor's conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach. *Wells Fargo Bank v. Ariz. Laborers, Teamsters, and Cement Masons*, 38 P.3d 12, 24 (Ariz. 2002) (en banc).

The underlying tort for Plaintiff's aiding and abetting theory is Eagle West's alleged breach of the duty of good faith. CCIC's sole argument is that the complaint does not allege any facts showing how it "substantially assisted" Eagle West in the commission of the underlying tort. Doc. 12, at 8. The test for whether a secondary tortfeasor rendered "substantial assistance" to establish liability as an aider and abettor is whether the assistance made it easier for the violation to occur, not whether the assistance was necessary. *Wells Fargo*, 38 P.3d at 27. Substantial assistance requires "more than 'a little aid.'" *Id.* at 26 (citation omitted). Even ordinary course transactions can constitute substantial assistance under some circumstances, such as where there is an extraordinary economic motivation to aid in the fraud. *Id.* at 27.

The complaint alleges that CIG is actively involved in the claims handling process by managing that process, setting goals and objectives, and implementing rules, policies, and procedures. Doc. 1-1, at 17, ¶ 53. The complaint also alleges that when Mr. Henry acknowledged Plaintiff's claim and assigned Plaintiff a claim number, he wrote in his capacity as General Adjuster for CCIC. Doc. 1-1, at 12-13, ¶¶ 22, 23. In his later emails denying Plaintiff's claim, allegedly in bad faith, Mr. Henry wrote in his capacity as a General Adjuster for CIG. *Id.* at 13-16, ¶¶ 23, 34, 46, 47 (alleging that the October 7, 2011 letter formally denying Plaintiff's claim contained a signature block identifying Mr. Henry as a General Adjuster for Eagle West, but that when the letter was sent to S&A on October 10, 2011 from Mr. Henry's email account, it identified him as a General Adjuster for CIG). As discussed above, for the purposes of the motion to dismiss, the

Court will construe the allegations relating to CIG as allegations directed against CCIC as the owner of the CIG service mark. Given that Mr. Henry corresponded with Plaintiff during the property inspection and ultimately denied Plaintiff's claim in his capacity as a General Adjuster for CIG, Plaintiff has alleged facts showing that CCIC substantially assisted the underlying breach of good faith. The Court concludes that these factual allegations are sufficient to state a claim under an aiding and abetting theory that is plausible on its face. *Twombly*, 550 U.S. at 570.

CCIC raises two additional arguments in its reply. It argues that Plaintiff's position is incongruent because Mr. Henry could not both represent CCIC in aiding and abetting Eagle West, and then later simply represent Eagle West in the adjustment of Plaintiff's claim. Doc. 20, at 9. The focus, however, is not on Mr. Henry as an individual but rather on his role as a General Adjuster for CCIC and Eagle West. It is possible for CCIC to aid and abet Eagle West through the actions of a common employee. CCIC also argues that the complaint does not assert an extraordinary economic motivation that can be construed as substantial assistance. Doc. 20, at 9. Under Arizona case law, extraordinary economic motivation is one factor that suggests substantial assistance in the context of ordinary transactions, but is not a necessary factor. Mr. Henry's denial of Plaintiff's claim as General Adjuster for CIG, if made in bad faith, certainly meets the test articulated by the Arizona Supreme Court in that he "made it easier for the violation to occur." *Wells Fargo*, 38 P.3d at 27. The Court will accordingly deny the motion to dismiss the aiding and abetting theory against CCIC.

**IT IS ORDERED** that the motion to dismiss (Doc. 12) is **denied**.

Dated this 27th day of February, 2012.

_David G. Campbell_
David G. Campbell
United States District Judge